# Exhibit 1



**NEW YORK LIFE INSURANCE COMPANY**
51 Madison Avenue, New York, NY 10010

**NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION**
(A Delaware Corporation)
51 Madison Avenue, New York, NY 10010

**NYLIFE INSURANCE COMPANY OF ARIZONA**
(An Arizona Corporation)
4343 N. Scottsdale Road, Suite 220, Scottsdale, AZ 85251

### AGENT'S CONTRACT
(Form N9 - 01/06)

Agent: Jonathan C. Jones

Address: Redacted    Dublin    GA    31021
(Street)    (City)    (State)    (Zip)

General Office: Central Georgia A04

Effective Date: 12/31/07

    New York Life Insurance Company, New York Life Insurance and Annuity Corporation, and NYLIFE Insurance Company of Arizona (hereinafter collectively "New York Life") hereby authorize the Agent named above (hereinafter "the Agent"), to solicit applications for individual life insurance policies, individual annuity policies, individual health insurance policies, group insurance policies, and group annuity policies, all on such plans as are issued by New York Life at the time and place such applications are obtained. It is mutually agreed that this authority to act as a soliciting agent of New York Life is granted by New York Life and accepted by the Agent upon the following limitations, terms, provisions and conditions:

1. The Agent shall conduct the Agent's business with New York Life through the General Office named above until further written notice from New York Life. The Agent shall have no authority to solicit applications or conduct business in any jurisdiction unless New York Life and the Agent are duly licensed under the laws of such jurisdiction to sell such business and act as such soliciting agent, respectively. The Agent shall have no exclusive right to solicit applications in any territory.

2. The Agent shall have no authority for or on behalf of New York Life to accept risks of any kind, to make, modify or discharge contracts, to extend the time for paying any premium, to bind New York Life by any statement, promise or representation, to waive forfeitures or any of New York Life's rights or requirements, or to place New York Life under any legal obligation by any act which is not within the authority granted by New York Life in this contract or otherwise in writing.

3. The Agent is authorized to collect premiums on behalf of New York Life only as follows:

    (a) In connection with each application obtained by the Agent, including any supplementary application, the Agent may collect an amount not exceeding the full first premium for the policy applied for, or not exceeding the single premium if a single premium policy is applied for, but only if the Agent delivers to the applicant in exchange therefor the coupon receipt attached to the application and corresponding therewith in date and number; and

    (b) If the full first premium is not paid when the application is taken, the Agent shall collect any unpaid balance of all premiums due New York Life as of the delivery date; and

- 1 -

#227042 v1 (01/06)

(c) In the interval between the dates on the application and delivery, the Agent may collect an amount equal to the unpaid balance or the first full premium, by using the proper amendment to the application provided by the Company; and

(d) In connection with a change of, the conversion of, the reinstatement of, or the addition of a rider to, an in-force policy, the Agent may collect the amount charged the policyowner by New York Life for completing the change, conversion, reinstatement or addition; and

(e) The Agent may collect an amount equal to the premium in advance in accordance with the Company's rules; and

(f) The Agent may collect, consistent with the Company's policy, subsequent premium payments (non-cash) and additional non-cash deposits for insurance and annuity products.

Except as authorized above, the Agent shall have no authority to receive or collect for New York Life any premiums or other moneys due or to become due to it.

4. All moneys received by the Agent for or on behalf of New York Life shall be received by the Agent in a fiduciary capacity, and shall not be used for any personal or other purpose whatsoever but shall be immediately paid over to New York Life. When requested by New York Life to do so, the Agent shall advise New York Life, in writing, with respect to the circumstances under which the Agent delivered any policy and, with respect to any policy given to the Agent for delivery on which New York Life has not received any premium, whether the policy has been delivered or remains in the Agent's possession and whether the Agent has collected any premium on the policy.

5. Neither the term "Agent" (used in this Agent's Contract solely for convenience in designating one of the parties) nor anything contained in this Agent's Contract or in any of the rules or regulations of New York Life shall be construed as creating the relationship of employer and employee between New York Life and the Agent. Subject to the provisions of this Agent's Contract and within the scope of the authority granted by this Agent's Contract, the Agent, as an independent contractor, shall be free to exercise the Agent's own discretion and judgment with respect to the persons from whom the Agent will solicit applications, and with respect to the time, place, method and manner of solicitation and of performance under this Agent's Contract. The Agent agrees not to engage in conduct that will affect adversely the good standing or reputation of New York Life. Furthermore, the Agent:

(a) Shall be treated as an independent contractor for all purposes, including but not limited to federal and state taxation, withholding (other than Federal Insurance Contributions Act (FICA) taxes required for full time life insurance agents pursuant to Section 3121(D)(3) of the Federal Internal Revenue Code), unemployment insurance and workers' compensation;

(b) Shall be paid a commission based on his/her sales activity, without deduction for taxes (other than FICA taxes required for full time life insurance agents pursuant to Section 3121(D)(3) of the Federal Internal Revenue Code), which commission shall be directly related to sales or other output;

(c) Shall not receive any remuneration related to the number of hours worked;

(d) Shall be permitted to work any hours that the Agent chooses;

(e) Shall be permitted to work out of the Agent's office or home, or a New York Life General Office; and

(f) May be provided with office facilities, clerical support, and certain supplies, but Agent shall otherwise bear Agent's own expenses, including but not limited to automobile, travel and entertainment expenses.

New York Life shall comply with the provisions of this Section 5 and any regulations pertaining thereto, but such compliance shall not affect Agent's status as an independent contractor nor should it be construed as an indication that Agent is an employee of New York Life.

6. The Agent hereby (a) acknowledges receipt of the Agent/Registered Representative's Handbook (hereinafter "Handbook"), and agrees to observe and abide by the limitations of authority and the rules specified in or issued as supplements to the Handbook that apply generally to Agents of New York Life; (b) agrees that the Agent's

rights to receive commissions and service fees as provided in this Agent's Contract shall be further subject to the rules relating to commissions and service fees as contained in the Handbook, or other published New York Life rules; and (c) agrees that, under the circumstances stated in the Handbook, the Agent shall be liable for payment of the fees, charges and payments specified in the Handbook. The agreements contained in this Section 6 shall extend to any changes or additions to said limitations and rules, whether published in a new Handbook or otherwise given to the Agent by written notice, but no rule hereafter adopted shall be construed so as to restrict the Agent's right to direct and control the Agent's work in performance of this Agent's Contract.

7. The Agent agrees to comply with New York Life's published rules relating to continuing education and agrees that New York Life may amend such rules from time to time.

8. To the fullest extent allowed by law, the Agent agrees to reimburse New York Life for all attorney's fees, costs, expenses, losses, damages and liability of every kind which New York Life may at any time incur or pay on account of:

   (a) Any claim arising from or related to any misconduct, error, act or omission, or other unauthorized act by the Agent or any of the Agent's employees.

   (b) Any breach by the Agent of any terms or provisions of this Agent's Contract or any of New York Life's procedures, rules or guidelines.

   (c) Any assignment, garnishment, attachment or other legal process or order of any kind arising from or related to this Agent's Contract or any other agent's contract.

   (d) The Agent's failure, upon termination of this Agent's Contract pursuant to Sections 10 or 11 hereof, to immediately turn over to the Company all client files, whether in paper, electronic, or any other format.

9. New York Life is hereby given a paramount and prior lien upon all compensation payable under or as a result of this or any previous agent's contract and under any and all agreements amendatory or supplementary to this Agent's Contract as security for the payment of any claim or indebtedness or reimbursement whatsoever due or to become due to New York Life from the Agent without limitation of New York Life's other legal or equitable remedies as regards such indebtedness or reimbursement, including, but not limited to, the right to charge interest and to recover the cost of any collection and attorney's fees. Any sums becoming due to the Agent at any time may be applied, directly, by New York Life to the liquidation of any indebtedness or obligation of the Agent to New York Life, but the failure to so apply any sum shall not be deemed a waiver of New York Life's lien on any other sums becoming due nor impair its rights to so apply such sums.

10. Either the Agent or New York Life may, with or without cause, terminate this Agent's Contract upon written notice, said termination to become effective thirty days after the day on which such notice is dated.

11. In addition to the right of New York Life to terminate this Agent's Contract as provided in Section 10 above, New York Life shall have the right, at its option, to terminate this Agent's Contract for cause immediately upon giving written notice of such termination to the Agent, for any one or more of the following:

   (a) The collection or receipt by the Agent of any moneys for or on behalf of, or due or to become due to, New York Life except as authorized in Section 3 above.

   (b) Any unauthorized appropriation to the Agent's own use and purpose of any money or other property received by the Agent for or on behalf of New York Life or received by the Agent for the benefit of a person other than the Agent.

   (c) The submission to New York Life by the Agent of any document on which any required signature is not a genuine or duly authorized signature.

   (d) Any withholding by the Agent of any policy or document after such policy or document shall have been demanded by the New York Life.

#227042 v1 (01/06)

(e) Any act of the Agent by which the Agent, directly or indirectly, sells or offers to sell to any person or persons, policies issued by New York Life at any deviation from the published rates of New York Life as furnished to the Agent by New York Life from time to time.

(f) A violation by the Agent of the anti-rebate or improper inducement laws of any state or jurisdiction.

(g) A violation by the Agent of any federal or state law, rule or regulation or the rules or regulations of any other regulatory authority.

(h) A violation by the Agent of any of New York Life's policies, procedures, rules or guidelines.

(i) Revocation or suspension by any state or jurisdiction of the agent's license to act as a soliciting agent, or, if applicable, as a registered representative or investment advisor representative.

The above-listed grounds for termination are for illustrative purposes only and shall not serve to limit the grounds upon which a "for cause" termination may be based.

12. Any failure of New York Life in any instance to terminate this Agent's Contract when cause for such termination exists, or to insist upon compliance with any of the limitations, terms, provisions and conditions of this Agent's Contract, shall not be construed as a waiver of any of New York Life's rights or of any such limitations, terms, provisions and conditions, or of the right of New York Life to thereafter enforce its rights or insist upon such compliance.

13. (a) In the course of the Agent's performing his/her duties as a New York Life agent, New York Life may disclose to the Agent, the Agent may have or be given access to, or the Agent may develop, certain confidential information, proprietary information and/or trade secrets of New York Life (hereinafter collectively, "Confidential Information"). Unless otherwise excluded in this provision, Confidential Information shall mean any and all information provided by New York Life to the Agent or to which the Agent has or is given access, in whatever form, verbal or otherwise, including, but not limited to, customer and prospective customer information and data (including, but not limited to client lists and files), equipment, material, records, supplies, manuals, business plans, marketing plans, financial records and analyses, rate books, marketing-sales-pricing data, forms, lists, files, data, designs, reports, research, technical specifications, agreements, proprietary information, trade secrets and intellectual property whether or not identified as "Confidential Information," in whatever media, electronic or otherwise, and any other materials identified in writing as "Confidential Information."

(b) The term "Confidential Information" shall not apply to information that:

(i) has been legally in the Agent's possession prior to its disclosure to the Agent by New York Life and is not subject to any non-disclosure obligations;

(ii) has become part of the public domain through no fault of the Agent;

(iii) has been developed subsequent to, and independent of, disclosure to the Agent by New York Life; or

(iv) has been released in writing by New York Life for public disclosure, or is otherwise deemed by New York Life, in writing, to no longer be confidential.

(c) The Agent will not, without the prior written consent of New York Life, remove from New York Life's premises, copy or disclose Confidential Information to any third party, or otherwise jeopardize the confidential nature of the Confidential Information, and the Agent will not use New York Life's Confidential Information other than for the purposes of performing the duties specified in this contract. The Agent will hold all Confidential Information in strictest confidence, and such Confidential Information will not be copied, reproduced or altered either in whole or in part by any method whatsoever, unless agreed upon in advance and in writing by an executive officer of New York Life.

(d) Upon the voluntary or involuntary termination of this Agent's Contract for any reason, including but not limited to the Agent's resignation or retirement, the Agent agrees to immediately surrender to New York Life or its designee the original and any copies, notes, recordings, transcriptions or any other reproductions of Confidential Information, in any form whatsoever, regardless of whether or not the Agent has retained it

- 4 -  #227042 v1 (01/06)

in his/her personal possession. The Agent's obligations hereunder regarding Confidential Information shall survive the return of such Confidential Information or the voluntary or involuntary termination of this contract. Both during the term of this Agent's Contract and after its termination, the Agent also agrees not to divulge Confidential Information to, share such information with, or permit access to it by, any individual or organization not then currently engaged or employed by New York Life.

14. (a) Within any jurisdiction(s) in which the Agent, during the term of this Agent's Contract, has been licensed to sell insurance, annuities or securities for New York Life or any of its subsidiary or affiliated companies, and during and for eighteen (18) months following the voluntary or involuntary termination of this Agent's Contract for any reason, including but not limited to the Agent's resignation or retirement:

    (i) The Agent will not in any way directly or indirectly advise, induce or assist any customer of New York Life or any of its subsidiary or affiliated companies, be it a person, a company or an organization, to reduce, replace, lapse, surrender, cancel or otherwise relinquish any insurance, annuities or securities products obtained from or through New York Life or any of its subsidiary or affiliated companies; nor will the Agent in any way directly or indirectly make use of any Confidential Information (as that term is defined in Section 13 hereof) in order to enable a third party not associated with New York Life to advise, induce or assist any customer of New York Life or any of its subsidiary or affiliated companies, be it a person, a company or an organization, to reduce, replace, lapse, surrender, cancel or otherwise relinquish any insurance, annuity or securities products obtained from or through New York Life or any of its subsidiary or affiliated companies.

    (ii) The Agent will not in any way directly or indirectly induce or assist in any way in the inducement or attempted inducement of, any agent or employee of New York Life to leave New York Life or in any way modify his/her relationship with New York Life; nor will the Agent directly or indirectly, hire or contract with, or cause others to hire or contract with, any employees or agents of New York Life; nor will the Agent directly or indirectly, participate, encourage or assist in the hiring or contracting process for any other company of any employees or agents of New York Life.

    (iii) The Agent will promptly inform New York Life of the identity of any of his or her subsequent employers (whether the Agent is engaged as an independent contractor or employee) which are engaged in the business of insurance, along with the Agent's new title and a description of the Agent's new position; and the Agent hereby authorizes New York Life to present a copy of this Agreement to any such employer.

    (b) Without prejudice to whatever other recourse New York Life may have in the event that the Agent violates any provision of Sections 13 or 14 hereof, including without limitation, an action in damages, New York Life shall have the right to obtain equitable relief where necessary to prevent violations of Sections 13 or 14 hereof. Such relief shall include, but not be limited to, temporary restraining orders and temporary or preliminary injunctions. The Agent hereby acknowledges that, in the event of any such violation, New York Life will suffer irreparable harm and that an injunction is therefore a necessary remedy under the circumstances.

15. (a) The Agent and New York Life agree that any dispute, claim or controversy arising between them, including those alleging employment discrimination (including sexual harassment and age and race discrimination) in violation of a statute (hereinafter "the Claim"), as well as any dispute as to whether such Claim is arbitrable, shall be resolved by an arbitration proceeding administered by the NASD in accordance with its arbitration rules.

    (b) In the event that the NASD refuses to arbitrate the Claim, the Agent and New York Life agree that the Claim, as well as any dispute as to whether such Claim is arbitrable, shall be resolved by an arbitration proceeding administered by the American Arbitration Association (hereinafter "AAA") in accordance with its National Rules for the Resolution of Employment Disputes (hereinafter "NRRED"). The arbitration shall be conducted at a location designated by AAA, which location shall be within fifty (50) miles of the New York Life General Office to which the Agent is or was most recently assigned. If the amount of the claim is $50,000 or less, exclusive of extracontractual, extracompensatory, punitive and exemplary damages, the dispute shall be heard by one arbitrator appointed in accordance with the NRRED. If the amount of the claim exceeds $50,000, exclusive of extracontractual, extracompensatory, punitive and exemplary damages, a three-person arbitration panel shall hear the arbitration with one arbitrator being selected by each party and the third, who shall act as chairperson, appointed in accordance with the

NRRED. After the panel of three arbitrators has been selected for the case, the parties may agree to have one of the arbitrators serve as the single arbitrator who will hear the case.

(c) In either event, within thirty (30) days, the arbitrator(s) shall issue a written decision explaining the basis for their decision and/or award. Judgment upon the written award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction.

(d) Exclusive of Claims alleging employment discrimination (including sexual harassment and age and race discrimination) in violation of a statute, the costs and expenses of the arbitrators for any arbitration shall be split evenly between the Agent and New York Life.

(e) Notwithstanding the other provisions of this Section 15, New York Life shall be entitled to seek judicial relief of an equitable nature from any court of competent jurisdiction where necessary to prevent violations of Sections 13 or 14 hereof. Such relief shall include, but not be limited to, temporary restraining orders, and temporary or preliminary injunctions.

16. If New York Life is successful in any proceeding or suit against the Agent to enforce any provision Sections 13 or 14 hereof, or brought to establish damages sustained by New York Life as a result of the Agent's violation of any provision of Sections 13 or 14 hereof, the Agent agrees to reimburse New York Life for legal fees and other expenses incurred by or on behalf of New York Life relating to or in connection with enforcing the terms of Sections 13 or 14.

17. Except for the right to receive commissions, the rights, interests and claims of the Agent against New York Life arising under or growing out of this Agent's Contract are not assignable, and no assignee shall acquire any rights thereto, without the written consent of New York Life. The right to receive commissions under this Agent's Contract may be assigned without the written consent of New York Life, but New York Life must receive reasonable proof of such assignment before it commences payment to an assignee. In no event shall New York Life be obligated to make a payment to an assignee that is prohibited by applicable law. The rights of an assignee under any assignment to which consent has been or may be given or to an assignment of the right to receive commissions, shall be subject to the paramount and prior lien given to New York Life by Section 9 above.

18. **Commissions on Individual Life Insurance, Individual Health Insurance and Individual Annuity Policies—** New York Life shall pay to the Agent, subject to all the limitations, terms, provisions and conditions of this Agent's contract, commissions on premiums received by New York Life under individual life insurance, individual health insurance and individual annuity policies issued as a result of applications obtained by the Agent while this Agent's Contract is in force, such commissions being at the applicable rates and for the policy years, or portions thereof, and under the rules and conditions as specified for agents operating under Agent's Contract (Form N9) in New York Life's schedules of first year and renewal commission rates in force at the time the applications are obtained unless specified otherwise, in writing, by New York Life. A copy of such schedules will be available for the Agent's inspection at any reasonable time at the General Office named above. New York Life reserves the right to change compensation, in whole or in part, at any time by giving written notice to the Agent and the new rates, policy years, rules and conditions will apply as set forth in the schedules.

On all types and plans of individual life insurance, individual health insurance and individual annuity policies that New York Life may issue and that are not included in the schedules of first year and renewal commission rates, or although included in such schedules are issued under special underwriting terms and conditions, the commissions shall be such as shall be designated in writing by a duly authorized Executive Officer of New York Life.

19. **Service Fees on Individual Life and Individual Health Insurance Policies—** New York Life shall pay to the then current agent of record, subject to all the limitations, terms, provisions and conditions of this Agent's Contract, service fees on premiums received by New York Life under individual life and individual health insurance policies, such service fees being at the applicable rates and for the policy years, or portions thereof, and under the rules and conditions as specified for agents operating under Agent's Contract (Form N9) in New York Life's schedules of first year and renewal commission rates in force at the time the policy applications are obtained unless specified otherwise, in writing, by New York Life.

A service fee will be paid to the then current agent of record only if, at the time the fee is payable,
(a) the policy for which the fee is payable is in force, and

(b) the agent of record is operating under an Agent's Contract with New York Life, and

(c) the agent of record is servicing the policy in a manner satisfactory to both the policyowner and New York Life. New York Life's decision shall be controlling in any dispute as to whether service is being provided in a satisfactory manner.

20. **Compensation on Group Insurance Policies, and Group Annuity Policies**—New York Life shall pay to the Agent, subject to all the limitations, terms, provisions and conditions of this Agent's Contract, compensation on premiums received by New York Life under group insurance policies and on considerations received by New York Life under group annuity policies effected upon applications obtained through the solicitation of the Agent while this Agent's Contract is in force. The amount of such compensation will be determined in accordance with New York Life's compensation rates and rules in force at the time such policy takes effect. A copy of such compensation rates and rules will be available for the Agent's inspection at any reasonable time at the General Office named above.

New York Life reserves the right to change compensation, in whole or in part, at any time without notice to the Agent, and the new rates, policy years, rules and conditions will apply to premiums received on coverage which becomes effective after any such change takes effect.

Compensation with respect to (a) group insurance additions, extensions, liberalizations, reinstatements or replacements, and (b) group insurance underwritten jointly by New York Life and another insurer or reinsured, in whole or in part, by another insurer or by New York Life, shall be determined in accordance with New York Life's rules and regulations, whether published or unpublished, which are in effect at the time of the addition, change or underwriting.

21. Should New York Life, in its sole discretion, deem it appropriate at any time to cancel a policy and refund any premium on which the Agent received any payment, such payment shall be charged back to the Agent and shall constitute an indebtedness of the Agent to New York Life and may be debited against the Agent's ledger.

22. Any commissions payable under this Agent's Contract after the Agent's death shall be credited to the Agent's account, as they become due, and be payable to the Agent's executors, administrators or assigns after deduction therefrom of any indebtedness or obligation of the Agent to New York Life.

23. Nothing in this Agent's Contract, or any amendment or supplement to this Agent's Contract, nor in any of the printed literature or forms of New York Life shall impair New York Life's right to the full and free exercise of its judgment in acting upon any application for an insurance or annuity policy; and the Agent shall have no right to any commission for submitting any application upon which no insurance or annuity policy is effected with New York Life.

24. Written notice to the Agent under this Agent's Contract or any amendment or supplement to this Agent's Contract may be given by mail or by publication in any official publication or bulletin of New York Life or by any other means, except that a notice under Section 10 or Section 11 above shall not be given by means of such publication. If the written notice to the Agent is given by mail, it shall be deemed to have been given when duly addressed and mailed to the last known post office address of the Agent, postage prepaid. If such notice is given by publication, it shall be deemed to have been given whenever published as above.

25. This Agent's Contract shall take effect as of the effective date stated on Page 1 hereof, if duly signed by the Agent and countersigned on behalf of New York Life.

26. The provisions of this Agent's Contract shall be considered severable and independent of each other and in the event that any provision of this Agent's Contract is found to be invalid or unenforceable, the remaining provisions of this Agent's Contract shall remain in full force and effect.

27. To the fullest extent allowed by law, this Agent's Contract shall be governed by and interpreted in accordance with the laws of the State of New York without regard to conflict of law rules. In the event that both the NASD and AAA decline to arbitrate any dispute hereunder in accordance with Section 15 hereof, each of the parties to this Agent's Contract consents to the exclusive jurisdiction and venue of the state and federal courts within the state of New York for any action arising out of this Agent's Contract, except such action as may be necessary by New York Life to protect, preserve and/or realize its interest in the Agent's assets located in another jurisdiction.

28. At the Agent's expense, the Agent shall obtain and maintain errors and omissions insurance coverage from the New York Life-Sponsored Professional Liability Policy or an "A"-rated insurance carrier in an amount equal to not less than $1 million per occurrence/$3 million annual aggregate. This coverage must be obtained by the earlier of the end of the Agent's First Contract Year or at the time the Agent enters into a Registered Representative's Agreement with New York Life's affiliated broker-dealer and must be maintained as long as this Agent's Contract remains in effect. If the Agent is not enrolled in the New York Life-Sponsored Professional Liability Policy, the Agent must purchase at his/her expense an extended reporting period endorsement to his/her errors and omissions policy that covers at least five years if: i) this Agent's Contract is terminated for any reason; or ii) his/her errors and omissions coverage is terminated or cancelled and not replaced with comparable coverage that includes prior acts. New York Life reserves the right to change the amount of required coverage at any time by giving written notice to the Agent. Failure to comply with this provision will constitute grounds for the immediate termination of this Agent's Contract.

29. The first Contract Year under this Agent's Contract will commence on the effective date in the calendar month stated on Page 1 hereof and will end in the next succeeding year on the last day of the calendar month specified in said effective date. Each subsequent Contract Year shall be a period of twelve (12) consecutive calendar months ending in each succeeding year on the last day of the calendar month so specified. It is understood and agreed for all purposes of the Agent's association with New York Life that any policies effected upon applications obtained by the Agent while any Introductory Contract was in force immediately prior to the effective date of this Agent's Contract, shall be deemed to have been obtained during the first Contract Year, as defined above.

30. The following Sections shall survive termination of this Agent's Contract by either party for any reason: 8, 9, 12, 13, 14, 15, 16, 27 and 28.

IN WITNESS WHEREOF, the parties to this Agent's Contract have subscribed their names hereto and to a duplicate hereof.

Witnessed by _Amelia Sutt_

_____ Agent
NEW YORK LIFE INSURANCE COMPANY
NEW YORK LIFE INSURANCE AND
ANNUITY CORPORATION
NYLIFE INSURANCE COMPANY OF ARIZONA

By:

Mark W. Pfaff
Senior Vice President - Agency

Countersigned by New York Life Insurance Company, New York Life Insurance and Annuity Corporation and NYLIFE Insurance Company of Arizona
on January 2, 2008
by N. M_____
Title CONTRACT REGISTRAR

- 8 -

#227042 v1 (01/06)